UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CHELSEA BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 1:24-CV-00071 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CHATTANOOGA HOUSING | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CHATTANOOGA HOUSING AUTHORITY'S
## ANSWER TO VERIFIED COMPLAINT FOR
## INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND ATTORNEY'S FEES

Defendant, Chattanooga Housing Authority ("CHA"), by and through counsel, answers the

Verified Complaint for Injunctive Relief, Declaratory Relief, and Attorney's Fees (the

"Complaint") as follows:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction over this action and the defendant pursuant to 28 U.S.C.

§ 1331 because this case arises under the Constitution and laws of the United States.

**ANSWER**:    **Admitted.**

2.       This Court is authorized to issue declaratory relief pursuant to 28 U.S.C. § 2201

and Fed. R. Civ. P. 57.

**ANSWER**:    **Admitted.**

3.       This Court is authorized to issue injunctive relief pursuant to 28 U.S.C. § 2202 and

Fed. R. Civ. P. 65.

**ANSWER**:    **A**dmitted.

4.      Venue is proper in the Eastern District of Tennessee under 28 U.S.C. § 1391 because it is in the Judicial District in which all of the events or omissions giving rise to plaintiff's claims occurred, it is the District in which defendant's principal place of business is located, and it is the District in which defendant conducts business.

**ANSWER**:      **Admitted.**

## PARTIES

5.      Plaintiff, Chelsea Bryant, is a citizen of the United States and a resident of Hamilton County, Tennessee.

**ANSWER**:      **Admitted.**

6.      Ms. Bryant was a participant in the HCV Program pursuant to Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f. Ms. Bryant's voucher was administered by defendant Chattanooga Housing Authority.

**ANSWER**:      **Admitted.**

7.      Defendant Chattanooga Housing Authority is a Public Housing Authority ("PHA"), a governmental or public body created and authorized by the Tennessee Housing Authorities Law Tenn. Code Ann. § 13-20-101 *et seq*. to develop and operate housing and housing programs for low-income families. CHA administers the federally funded and regulated Housing Choice Voucher program.

**ANSWER**:      **Admitted.**

## STATEMENT OF FACTS

8.      Ms. Bryant began her participation in the HCV Program administered by CHA in late 2017.

**ANSWER**:    CHA admits Ms. Bryant was selected by voucher for participation in the HCV Program in October 2017.

9.    When Ms. Bryant's participation in the HCV Program began, she lived with her three children. Ms. Bryant has since given birth to another child and is currently expecting twins.

**ANSWER**:    CHA is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 9 and therefore denies the same.

10.    On June 23, 2022, as part of her annual recertification, Ms. Bryant submitted to CHA a change of income form and a letter from her employer indicating that she was currently on unpaid maternity leave as of June 25, 2022. The letter further indicated that her estimated return date was August 22, 2022. Exhibit A.

**ANSWER**:    CHA admits that Ms. Bryant submitted Exhibit A to CHA on or about June 23, 2022.  CHA denies all allegations of Paragraph 10 inconsistent with the express terms of Exhibit A.  CHA denies all other allegations of Paragraph 10 not expressly admitted herein.

11.    The change of income form that Ms. Bryant signed and submitted on June 23, 2022, includes a "Notice of Third Party & EIV Verifications," which explains: "CHA will process Third Party and EIV Verifications of all household members in order to make the most accurate determination of the assistance entitled to you as a participant of the Housing Choice Voucher Program. The CHA will use every means of verification information available." Ex. A, 2.

**ANSWER**:    CHA admits that the quoted language is included in the express terms of Exhibit A. CHA denies all allegations of Paragraph 11 inconsistent with the express terms of Exhibit A.  CHA denies all other allegations of Paragraph 11 not expressly admitted herein.

12.     On July 6, 2022, Ms. Bryant informed CHA that her family size had increased due to the birth of her son.

**ANSWER**:     **Admitted.**

13.     Ms. Bryant's rent portion was adjusted to reflect her unpaid maternity leave. Effective August 1, 2022, CHA paid the full contract rent of $850 directly to Ms. Bryant's landlord, and CHA directly paid Ms. Bryant $174 monthly as a utility allowance.

**ANSWER**:     **Admitted except that CHA began paying the full contract rent and utility allowance on July 1, 2022.**

14.     Ms. Bryant returned to work full time on August 22, 2022, exactly as planned.

**ANSWER**:     **CHA admits that Ms. Bryant returned to work full time at some point in August 2022. The remaining allegations of Paragraph 14 are denied.**

15.     Ms. Bryant's rent was not recalculated when she returned to work. CHA continued to pay the full rent amount until Ms. Bryant's annual recertification in July 2023.

**ANSWER**:     **CHA admits Ms. Bryant's rent was not recalculated when she returned to work because she failed to notify CHA of her change in income and status as required by program rules. CHA admits it continued to pay her full rent amount until her annual recertification in July 2023.**

16.     As the full-time working mother of three children, including a newborn, Ms. Bryant failed to immediately notice that CHA had continued to pay her full rent portion. Because her employer had already informed CHA of her return date, Ms. Bryant assumed that CHA was working on recalculating her rent and would make her a letter informing her of her new rent portion.

4

**ANSWER**:  CHA is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 16 and therefore denies the same.

17.     As an HCVP participant for over six years, Ms. Bryant is very familiar with the expected speed of the recertification and rent recalculation process with CHA. For example, in 2020, Ms. Bryant reported a change in income in February, but her rent was not recalculated until August. At that time, Jennifer Zendejas, CHA Program Compliance Specialist explained: "the Change of Income that [was] submitted back in February wasn't actually a decrease but an increase […], therefore your Change of Income was combined with your annual [recertification]." Exhibit B.

**ANSWER**:   CHA admits that Ms. Bryant is very familiar with aspects of the recertification and recalculation process at CHA.  CHA denies all allegations of Paragraph 17 inconsistent with the express terms of Exhibit B.  CHA is without sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 17 and therefore denies same.

18.     In late September 2023, Ms. Bryant received a phone call from Sarah Grace Pennington, CHA fraud investigator, asking her to attend a meeting on September 25, 2023. Ms. Bryant was not informed of the topic of this meeting in advance.

**ANSWER**:   The first sentence of paragraph 18 is admitted.   The remaining allegations of Paragraph 18 are denied.

19.     At the September 25, 2023 meeting, Ms. Bryant was told that she had committed fraud by failing to report her income. She was informed that she owed CHA $7,875 in subsidy overpayment. She was not shown any calculations or evidence. She was told that her housing assistance would be terminated unless she immediately signed a repayment agreement for $7,875.

**ANSWER**:    CHA admits that on September 25, 2023, Ms. Bryant was informed of unreported income.  CHA admits Ms. Bryant was informed that she owed $7,875 for overpayment of subsidy.  All remaining allegations of Paragraph 19 not expressly admitted herein are denied.

20.    Due to CHA's policy of not entering into repayment agreements for amounts over $2,000, this proposed repayment agreement required Ms. Bryant to make an initial payment of $5,876 before December 1, 2023.

**ANSWER**:  CHA admits the allegations of Paragraph 20 except that the repayment agreement required the down payment to be made on or before December 1, 2023.

21.    Ms. Bryant made approximately $32,000 in 2023. The initial deposit required by CHA amounted to nearly twenty percent of her annual income.

**ANSWER**:    CHA is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 21 and therefore denies the same.

22.    Ms. Bryant was afraid of being terminated from the HCV Program, so she signed the repayment agreement.

**ANSWER**:    CHA admits Ms. Bryant signed the repayment agreement.  CHA is without sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 22 and therefore denies the same.

23.    Ms. Bryant was told that she could appeal CHA's determination of fraud, but the appeal hearing would not take place until after her initial payment deadline.

**ANSWER**:  CHA admits Ms. Bryant was told she could appeal CHA's determination. CHA denies that Ms. Bryant was told any potential date or timing for an appeal hearing.

6

24.     Despite not agreeing with CHA's allegation of fraud, Ms. Bryant attempted to secure third-party rental assistance to pay CHA. She was unsuccessful, mainly because third-party rental assistance providers are unwilling to pay fraud-related debt.

**ANSWER**:     **CHA is without sufficient information to form a belief as to the truth or falsity of the allegations of Paragraph 24 and therefore denies the same.**

25.     In late November, CHA mailed Ms. Bryant a letter scheduling her for a grievance hearing on December 6, 2023.

**ANSWER**:     **Admitted.**

26.     On December 6, 2023, Joe Kelly, General Counsel of CHA, conducted the grievance hearing. Sarah Grace Pennington and Michelle Pfeuffer, CHA fraud investigators, and Sonali Arora, Associate General Counsel, were also in attendance. Ms. Bryant secured counsel the morning of her hearing, and she appeared with counsel from Legal Aid of East Tennessee.

**ANSWER**:     **Admitted.**

27.     Ms. Bryant was unable to make the initial payment prior to the deadline. In the hearing, she expressed confusion and frustration with CHA's failure to verify her income or recalculate her expected tenant contribution when she returned from maternity leave.

**ANSWER**:     **CHA is without sufficient information to form a belief as to the truth or falsity of the allegations of the first sentence of Paragraph 27 and therefore denies the same.  CHA denies the allegations of the second sentence of paragraph 27.**

28.     At the hearing, counsel for Ms. Bryant remarked that Ms. Bryant had no intent to defraud CHA. Joe Kelly, acting as both hearing officer and general counsel, replied: "fraud does not require scienter."

**ANSWER**: **CHA admits that Ms. Boatner stated to Mr. Kelly something to the effect that the repayment agreement could not be binding absent intent to defraud by Ms. Bryant. CHA admits that in the context of attempting to explain to Ms. Boatner that the obligation to comply with repayment agreements and repay all subsidy overpayments applies to both intentional and unintentional income reporting omissions, Mr. Kelly used a phrase something to the effect of "fraud repayments do not require scienter". CHA denies all remaining allegations of Paragraph 28 not expressly admitted herein.**

29. On December 28, 2023, CHA issued a one-page hearing decision, written by Joe Kelly which states:

> At the hearing, the fraud investigator informed us that on September 25, 2023, you signed the Fraud Recovery Agreement (FRA) that required you to pay $7,875, but failed to make payments towards that balance. Per that FRA, you were required to pay $5,876 by December 1, 2023. At the hearing, you stated that you needed additional time to pay off your balance.
>
> Based on testimony and evidence presented to me, I find that you failed to report your income resulting in owing $7,875 to CHA but need additional time to pay off your balance. Therefore, your request for participation in HCVP is GRANTED provided you pay off $5,876 by January 12, 2024. Failure to make the down payment by January 12, 2024, will result in denial of your appeal and termination from the HCVP."

Exhibit C.

**ANSWER**: **CHA admits that on December 28, 2023, CHA issued a one-page hearing decision, written by Joe Kelly. CHA admits that the quoted language is included in the express terms of Exhibit C. CHA denies all allegations of Paragraph 29 inconsistent with the express terms of Exhibit C. CHA denies all remaining allegations of Paragraph 29 not expressly admitted herein.**

30. Ms. Bryant was again unable to pay within the required timeframe. On January 17, 2024, CHA issued a letter, written by HCV Director Tammie Carpenter, informing Ms. Bryant

8

that her voucher assistance would terminate effective February 29, 2024. The letter further informed Ms. Bryant that CHA's decision is final and that she would be banned from receiving housing assistance for five years.

**ANSWER**:    **CHA admits that Ms. Bryant did not make the required down payment within the required time frame.  CHA admits that HCVP Director Tammie Carpenter issued a letter informing Ms. Bryant that her voucher assistance would terminate, effective February 29, 2024.  CHA denies all allegation of Paragraph 30 inconsistent with the express terms of the HCVP decision letter.  CHA denies all remaining allegations of Paragraph 30 not expressly admitted herein.**

## STATUTORY AND REGULATORY FRAMEWORK

31.    The United States Housing Act of 1937, 42 U.S.C. § 1437, *et seq.*, was enacted "to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families." 42 U.S.C. § 1437(a)(1)(A).

**ANSWER**:    **CHA admits that the statutes cited in this paragraph are in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statutes.**

32.    The Housing Choice Voucher ("HCV") program, often referred to as "Section 8," is one component of the United States Housing Act. The HCV program is funded by the Department of Housing and Urban Development ("HUD") and administered by local Public Housing Agencies like CHA.

**ANSWER**:    **Admitted.**

33.     Unlike traditional forms of public housing, the HCV program permits an eligible participant to pay subsidized income-based rent to the private landlord of her choosing by using a housing voucher issued by a participating PHA.

**ANSWER**:     **Admitted.**

34.     PHAs screen applicants and issue vouchers to eligible participants who are then responsible for finding a private landlord who will agree to rent to them. Once the participant finds a private landlord who will agree to rent to them, the PHA reviews the tenant's income information to determine how much rent the tenant can affordably pay−typically capped at 30% of household income−and directly pays the landlord the remainder of the total market rent.

**ANSWER**:     **CHA is without sufficient information to form a belief as to the truth or falsity of the allegation that PHAs "typically" cap tenant rent at 30% of household income and therefore denies the same. CHA admits the remaining allegations of Paragraph 34.**

35.     PHAs have some discretion to establish local policies for the administration of the HCV program, but these discretionary policies must be reflected in a written Administrative Plan, which must be in accordance with HUD regulations and requirements. 24 C.F.R. § 982.54(a).

**ANSWER**:     **CHA admits that the regulation cited in this paragraph is in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulation.**

36.     The Administrative Plan is subject to a public review process. 24 C.F.R. § 982.54(b). Once it is approved, the PHA must follow its own Administrative Plan. 24 C.F.R. § 982.54(c).

10

**ANSWER**:    CHA admits that the regulations cited in this paragraph are in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulation.

37.    A PHA's failure to operate in compliance with its own Administrative Plan leads to inconsistent, unpredictable, and arbitrary results.

**ANSWER**:    **Denied.**

38.    Because PHAs have a limited number of housing choice vouchers available, participation in the HCV program is competitive. PHAs tend to have lengthy waitlists, often exceeding a year.

**ANSWER**:    CHA admits the allegations of the first sentence of Paragraph 38. CHA is without sufficient information to form a belief as to the truth or falsity of the allegations of the second sentence of Paragraph 38 and therefore denies the same.

39.    The PHA is responsible for calculating the tenant's portion of the rent, and each PHA must "establish procedures that are appropriate and necessary to ensure that income data […] is complete and accurate." 42 U.S.C. § 1437f(o)(5)(B).

**ANSWER**:    CHA admits that the statute cited in this paragraph is in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statute.

40.    Once admitted, PHAs must review and verify tenant-provided income information at least annually. 42 U.S.C. § 1437f(o)(5)(B).

**ANSWER**:    CHA admits that the statute cited in this paragraph is in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statutes.

11

41.     PHAs are required to use HUD's Enterprise Income Verification ("EIV") tool to verify tenant-provided employment and income information. 24 C.F.R. § 5.233 EIV "is a web-based application, which provides PHAs with employment, wage, unemployment compensation, and social security benefit information" for HCV tenants and other recipients of federal housing assistance. Dep't. of Hous. And Urban Dev., PIH Notice 2018-18: A*dministrative Guidance for Effective and Mandated Use of the Enterprises Income Verification (EIV) System 2* (2018).

**ANSWER**:     **CHA admits that the regulation cited in this paragraph is in effect. CHA admits that HUD has issued the notice cited in this paragraph. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulation and notice.**

42.     PHAs may not rely on EIV information as the basis to terminate housing assistance without independently verifying the income and providing the tenant an opportunity to contest the finding. 42 U.S.C. § 3544(c)(2); 24 C.F.R. § 5.236(a). *See also* Notice PIH 2018-18 at 8 "(24 CFR § 5.236(a) prohibits PHAs from taking adverse action based solely on EIV information.").

**ANSWER**:     **CHA admits that the statutes and regulations cited in this paragraph are in effect. CHA admits that HUD has issued the notice cited in this paragraph. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statute, regulation, and notice.**

43.     If there is a discrepancy between EIV and tenant-provided income information, the PHA "shall promptly notify any […] participant in writing of any adverse findings made on the basis of the information." 24 C.F.R. § 5.236(c).

**ANSWER**:    CHA admits that the regulation cited in this paragraph is in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulation.

44.    The PHA must then also procure written third party verification of the discrepant EIV information by requesting "the undisclosed employer or income source to furnish any information necessary" to resolve the discrepancy. 24 C.F.R. § 5.236(b)(3)(i). PHAs may also ask the tenant to provide pay stubs, employer letters, bank statements or other forms of third-party verification. 24 C.F.R. § 5.236(b)(3)(ii).

**ANSWER**:    CHA admits that the regulations cited in this paragraph are in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulations.

45.    Third-party written verification must come directly from the tenant or the employer. PHAs may use Upfront Income Verification systems, like The Work Number, to validate tenant-reported income, but it cannot be used to resolve a discrepancy between tenant-reported income and EIV information. Notice PIH 2018-18 at 5.

**ANSWER**:    CHA admits that HUD issued the cited notice. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited notice.

46.    If third-party written verification does not resolve a large discrepancy, the PHA may then retroactively calculate how much the tenant has underpaid and enter into a repayment agreement with the tenant. *Id*. at 13.

13

**ANSWER**:    **CHA admits that HUD issued the cited notice. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited notice.**

47.    Repayment agreements "should be affordable," and the combined retroactive rent payment and tenant's current portion of the rent should "not exceed 40 percent of the family's monthly adjusted income." *Id.* at 15.

**ANSWER**:    **CHA admits that HUD issued the cited notice. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited notice.**

48.    Not all income discrepancies are the result of fraud; HUD defines fraud as "a single act or pattern of actions: (1) That constitutes false statement, omission, or concealment of a substantive fact, made with intent to deceive or mislead; and (2) That results in payment of section 8 program funds in violation of section 8 program requirements. 24 C.F.R. § 792.103.

**ANSWER**:    **CHA admits that not all income discrepancies are the result of fraud. CHA admits that the cited regulation is in effect. CHA denies all allegations of this paragraph that are not expressly admitted herein or are inconsistent with the express terms of the cited regulation.**

**Termination and Grievance**

49.    HCV recipients are entitled to procedural due process protections before their voucher assistance is terminated because participation in a public benefits program, including continued participation in a housing assistance program, "is a property interest protected by due process," *Davis v. Mansfield Metro. Hous. Agcy.*, 751 F.2d 180, 184 (6th Cir. 1984)

**ANSWER**:    **Admitted.**

14

50.     In addition to this constitutional guarantee of due process, recipients of housing assistance also have a statutory right to procedural due process in the voucher termination process. 42 U.S.C. § 1437(k).

**ANSWER**:     **Denied.**

51.     The fundamental procedural right implicated in the termination of assistance in a public benefits program is the opportunity to be heard "at a meaningful time and in a meaningful manner" *Armstrong v. Manzo*, 380 U.S. 545, 551 (1965). This requires "timely and adequate notice detailing the reasons for a proposed termination and an effective opportunity to defend by confronting any adverse witness and by presenting his own arguments and evidence orally" *Goldberg v. Kelly*, 394 U.S. 254, 268 (1970).

**ANSWER**:     **Admitted.**

52.     To terminate HCV housing assistance, a PHA must first issue a notice that advises the tenant "of the specific grounds of any proposed adverse public housing agency action." 42 U.S.C. § 1734d(k)(1). The termination notice mut "contain a brief statement of the reasons for the decision" 24 C.F.R. § 982.555(c)(2)(i) and must "be sufficiently specific for it to enable an applicant to enable an applicant to prepare rebuttal evidence to introduce" at a hearing. *Woods v. Willis*, 515 Fed. Appx. 471, 479 (6th Cir. 2013) (citing *Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980).

**ANSWER**:     **CHA admits that the statutes and regulations cited in this paragraph are in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statutes and regulations.**

53.     Prior to termination, the HCV tenant must be offered "an opportunity for a hearing before an impartial party upon timely request" 42 U.S.C. § 1437d(k)(2). The hearing officer can

15

be "any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person." 24 C.F.R. § 982.555(d)(4)(i).

**ANSWER**: **CHA admits that the statutes and regulations cited in this paragraph are in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statute and regulation.**

54. Fundamentally, "an impartial decision maker is essential." Goldberg, 397 U.S. at 300. Although a decision maker may be employed by the agency whose decision is under review, the decision maker may be employed by the agency whose decision is under review, the decision maker must not "have participated in making the determination under review." *Id*.

**ANSWER**: **Admitted.**

55. Prior to the hearing, the tenant must have the opportunity to "examine any documents or records or regulations related to the proposal action" 42 U.S.C. § 1437d(k)(3).

**ANSWER**: **CHA admits that the statute cited in this paragraph is in effect. To the extent further response may be required, the allegations of this paragraph are denied.**

56. The tenant is permitted to be represented by counsel at the hearing, may examine witnesses, and may have others present at the hearing to make the statements on their behelf. 42 U.S.C. §§ 1437d(k)(4), 1437(k)(5).

**ANSWER**: **CHA admits that the statutes cited in this paragraph are in effect. CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statutes.**

57. After the hearing, tenants are entitled to a written decision from the hearing officer. 42 U.S.C. § 1734d(k)(6). The decision must rest solely on the legal rules and evidence presented at the hearing. *Goldberg*, 397 U.S. at 300. The hearing decision must briefly state the reasons for

the decision, and "[f]actual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6).

**ANSWER**:    **CHA admits that the statute and regulation cited in this paragraph are in effect. To the extent further response is required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statute and regulation.**

58.    The PHA is bound by a hearing decision unless it exceeds the authority of the hearing officer, is contrary to HUD regulations or requirements, or is otherwise contrary to federal, state, or local law. 24 C.F.R. § 982.555(f).

**ANSWER**:    **CHA admits that the regulation cited in this paragraph is in effect. To the extent further response is required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulation.**

## CLAIMS FOR RELIEF

**COUNT I: CHA violated the Due Process Clause of the Fourteenth Amendment to the United States by denying Ms. Bryant her right to receive a written pre-termination notice.**

59.    Plaintiff incorporates by reference the above-paragraphs as though fully pleaded herein.

**ANSWER**:    **In response to the allegations of Paragraph 59, Defendant similarly restates each answer set forth above as if fully rewritten here.**

60.    Ms. Bryant's participation in the HCV Program and her continued receipt of housing assistance payments is a constitutionally protected property interest. As a governmental actor, CHA is bound by the constitutional mandate not to terminate her housing assistance without issuing timely and adequate written notice detailing the reasons for the proposed termination.

17

**ANSWER**:     **Admitted.**

61.     CHA failed to issue any notice of termination prior to terminating her housing assistance payments.

**ANSWER**:     **Denied.**

62.     Because CHA failed to issue any notice, much less adequate notice, detailing its proposed reasons for terminating Ms. Bryant's housing assistance, Ms. Bryant was not afforded a meaningful opportunity to be heard, in violation of the procedural due process rights guaranteed to her by the Fourteenth Amendment of the United States Constitution.

**ANSWER**:     **Denied.**

63.     As a direct and proximate result of CHA's deprivation of Ms. Bryant's constitutionally protected property interest without adequate procedural protections, Ms. Bryant suffered and continues to suffer injury, including the threat of imminent homelessness.

**ANSWER**:     **Denied.**

**COUNT II: CHA violated the Due Process Clause of the United States Constitution by failing to provide Ms. Bryant a grievance hearing in front of an impartial decisionmaker.**

64.     Plaintiff incorporates by reference the above paragraphs as though fully pleaded herein.

**ANSWER**:     **In response to the allegations of Paragraph 64, Defendant similarly restates each answer set forth above as if fully rewritten here.**

65.     Ms. Bryant's participation in the HCV Program and her continued receipt of housing assistance payments is a constitutionally protected property interest. As a governmental actor, CHA may not deprive Ms. Bryant of her housing assistance without offering her a hearing conducted by an impartial decision maker.

**ANSWER**:     **Admitted.**

18

66.     Ms. Bryant's grievance hearing was conducted by Joe Kelly, General Counsel for the Chattanooga Housing Authority. In the hearing, Mr. Kelly presented evidence and made legal arguments on behalf of CHA.

**ANSWER**:     **CHA admits that Joe Kelly, General Counsel of CHA, served as the Hearing Officer for Ms. Bryant's appeal hearing.  CHA denies all remaining allegations of Paragraph 66.**

67.     By serving as both judge and prosecutor, Mr. Kelly deprived Ms. Bryant of her right to be heard by an impartial decision maker, in violation of the Fourteenth Amendment to the United States Constitution.

**ANSWER**:     **Denied.**

68.     As a direct and proximate result of CHA's actions, Mr. Bryant suffered and continues to suffer injury.

**ANSWER**:     **Denied.**

**COUNT III: CHA deprived Ms. Bryant of her right to receive a hearing decision that reflects the reasoning and evidence relied on by the decisionmaker, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.**

69.     Plaintiff incorporates by reference the above paragraphs as though fully pleaded herein.

**ANSWER**:     **In response to the allegations of Paragraph 69, Defendant similarly restates each answer set forth above as if fully rewritten here.**

70.     Ms. Bryant's participation in the HCV Program and her continued receipt of housing assistance payments is a constitutionally protected property interest. Because CHA is a governmental actor, Ms. Bryant is entitled to a written hearing decision that relies solely on the legal rules and evidence presented in the hearing.

19

> **ANSWER**:    **Admitted.**

71.    The hearing decision letter received by Ms. Bryant on December 28, 2023, does not explain the hearing officer's reasoning.

> **ANSWER**:    **Denied.**

72.    The hearing decision letter received by Ms. Bryant on December 28, 2023, indicates that the hearing officer relief on two pieces of evidence: testimony from a fraud investigator that Ms. Bryant signed a repayment agreement on September 25, 2023, and testimony from Ms. Bryant that she required additional time to pay that balance.

> **ANSWER**:    **CHA admits that those two pieces of evidence are referenced in the plain text of the hearing decision letter. CHA denies all allegations of Paragraph 72 inconsistent with the express terms of Exhibit C. CHA denies all remaining allegations of Paragraph 72 not expressly admitted herein.**

73.    The hearing decision letter concludes that: "[b]ased on the testimony and evidence presented to me, I find that [Ms. Bryant] failed to report [her] income resulting in owing $7,875 to CHA."

> **ANSWER**:    **CHA admits that the hearing decision letter concludes that, based upon the testimony and evidence presented to Joe Kelly, Ms. Bryant failed to report income resulting in owing $7,875 to CHA. CHA denies all allegations of Paragraph 73 inconsistent with the express terms of Exhibit C.**

74.    The hearing decision letter does not mention what evidence or testimony was used to support the hearing officer's conclusion that Ms. Bryant committed fraud, nor does it explain how CHA calculated the subsidy overpayment.

> **ANSWER**:    **Denied.**

20

75.     By failing to issue a written decision letter explaining the evidence and reasoning relied on by the hearing officer, CHA deprived Ms. Bryant of her Fourteenth Amendment right to a decision based solely on legal rules and evidence adduced at the hearing.

**ANSWER**:    **Denied.**

76.     As a direct and proximate result of CHA's actions, Ms. Bryant suffered and continues to suffer injury. Specifically, CHA's unsupported and legally erroneous conclusion that Ms. Bryant committed fraud has prevented Ms. Bryant from being eligible for third-party rental assistance, and, as a working parent of five, including newborn twins, Ms. Bryant cannot pay the unsubsidized rent amount and will likely face homelessness.

**ANSWER**:    **CHA denies that Ms. Bryant suffered and continues to suffer injury as a direct and proximate result of CHA's actions. CHA denies that it made an unsupported and legally erroneous conclusion. CHA is without sufficient information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 76 and therefore denies the same.**

**COUNT IV: CHA violated 42 U.S.C. § 1437d(k) by depriving Ms. Bryant of her right to adequate pre-termination notice.**

77.     Plaintiff incorporates by reference the above paragraphs as though fully pleaded herein.

**ANSWER**:    **In response to the allegations of Paragraph 77, Defendant similarly restates each answer set forth above as if fully rewritten here.**

78.     42 U.S.C. § 1437d(k)(1) requires PHAs "to establish and implement an administrative grievance procedure under which tenants will be advised of the specific grounds of any proposed agency action."

21

**ANSWER**:     CHA admits that the statute cited in this paragraph is in effect. To the extent further response is required, the allegations of this paragraph are denied.

79.     CHA's Administrative Plan for the HCV Program reflects compliance with this requirement: "CHA will give the family prompt written notice that the family may request a hearing within ten (10) business days of the notification. The notice will contain a brief statement of the reasons for the decision and state that if the family does not agree with the decision, the family may request an informal hearing on the decision within ten (10) business days of the notification." CHA Administrative Plan, 109.

**ANSWER**:     CHA admits that the quoted provision is included in CHA's Administrative Plan. CHA denies all allegations of Paragraph 79 inconsistent with the express terms of the Administrative Plan.

80.     Implementing regulations at 24 C.F.R. § 982.5 clarify that this mandatory notice must be written.

**ANSWER**:     CHA admits that the regulation cited in this paragraph is in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulation.

81.     Ms. Bryant never received a written or oral notice detailing the reasons for CHA's proposed termination.

**ANSWER**:     Denied.

82.     Because 42 U.S.C. § 1437d(k) confers a right to pre-termination notice, CHA's failure to issue such a notice violated Ms. Bryant's rights under the United States Housing Act.

**ANSWER**:     CHA admits that the statute cited in this paragraph is in effect. To the extent further response may be required, CHA denies that it failed to issue a pre-termination

notice or violated Ms. Bryant's rights under the United States Housing Act. CHA denies all remaining allegations of Paragraph 82 that are not expressly admitted herein.

83.     As a direct and proximate result of CHA's actions, Ms. Bryant suffered and continues to suffer injury.

**ANSWER**:     **Denied.**

**COUNT V: Because the hearing officer also over sees the fraud department, CHA violated Ms. Bryant's statutory right to an impartial decisionmaker.**

84.     Plaintiff incorporates by reference the above paragraphs as though fully pleaded herein.

**ANSWER**:     **In response to the allegations of Paragraph 84, Defendant similarly restates each answer set forth above as if fully rewritten here.**

85.     Defendant is required to operate its housing assistance program in compliance with the United States Housing Act, 42 U.S.C. § 1437 *et seq*., federal regulations, and their own administrative plan, which confer upon CHA an unambiguous obligation to offer a pre-termination hearing before an impartial party.

**ANSWER**:     **CHA admits that the statute, relevant federal regulations, and Administrative Plan referenced in this paragraph are in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the referenced statute, relevant federal regulations, and the Administrative Plan.**

86.     Implementing regulations explain that a hearing officer may be "any person or persons designated by the PHA, other than a person who made or approved the decision under review or a subordinate of this person." § 982.555(e)(4)(i).

**ANSWER**: **CHA admits that the regulation cited in this paragraph is in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulation.**

87.    Because CHA failed to issue a written pre-termination notice, it is unclear precisely who made or approved the decision to terminate Ms. Bryant's housing assistance. However, Ms. Bryant was called into the initial meeting by Sarah Grace Pennington, CHA fraud investigator.

**ANSWER**: **CHA admits that Sarah Grace Pennington, CHA fraud investigator, called Ms. Bryant for an initial meeting. CHA denies the remaining allegations of Paragraph 87.**

88.    CHA's fraud investigation program is overseen by the legal department.

**ANSWER**: **CHA admits that CHA employs fraud investigators within CHA's legal department. CHA denies that CHA fraud investigators or any other employees within the legal department make any decisions regarding termination of assistance.**

89.    The grievance hearing was conducted by Joe Kelly, General Counsel to CHA.

**ANSWER**: **Admitted.**

90.    As General Counsel, Mr. Kelly oversees CHA's legal department, including the fraud investigation program.

**ANSWER**: **CHA admits that CHA employs fraud investigators within CHA's legal department. CHA admits that Mr. Kelly oversees certain aspects of the fraud investigators' responsibilities, particularly on high-level or policy-related issues or issues that may involve threats to CHA personnel. CHA denies that Mr. Kelly generally has any direct involvement in, or performs any direct oversight of, the individual factual investigations performed by CHA's fraud investigators. CHA denies that Mr. Kelly provided any oversight for the**

24

investigation involving Ms. Bryant or that Mr. Kelly had any knowledge of the investigation involving Ms. Bryant prior to her appeal. CHA denies that CHA fraud investigators or any other employees within the legal department make any decisions regarding termination of assistance.

91.     Because Mr. Kelly oversees the fraud department, he is implicitly responsible for approving termination decisions made by the fraud department.

**ANSWER**:     **CHA denies that its fraud investigators or any other employees within CHA's legal department make any termination decisions, and therefore denies the allegations of Paragraph 91.**

92.     Because Mr. Kelly is responsible for approving termination decisions made by the fraud department, he cannot be a hearing officer in any matter involving termination of assistance due to alleged fraud.

**ANSWER**:     **Denied.**

93.     Mr. Kelly demonstrated actual bias in the hearing by, among other things, presenting evidence and making legal arguments on behalf of CHA.

**ANSWER**:     **Denied.**

94.     Because Mr. Kelly oversees both the legal and fraud departments, CHA violated Ms. Bryant's right to an impartial hearing officer pursuant to 42 U.S.C. § 1437d(k)(2).

**ANSWER**:     **Denied.**

95.     As a direct and proximate cause of CHA's action, Ms. Bryant suffered and continues to suffer injury.

**ANSWER**:     **Denied.**

**COUNT VI: Because the hearing decision did not include factual findings based on a preponderance of the evidence introduced at the hearing, CHA violated its obligation to operate its HCV Program in accordance with its own Administrative Plan.**

96.     Plaintiff incorporates by reference the above paragraphs as though fully pleaded herein.

**ANSWER**:     **In response to the allegations of Paragraph 96, Defendant similarly restates each answer set forth above as if fully rewritten here.**

97.     42 U.S.C. § 1437d(k)(3) entitles an HCV recipient to a written decision after the termination hearing.

**ANSWER**:     **CHA admits that the statute cited in this paragraph is currently in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statute.**

98.     CHA's Administrative Plan specifies: "[f]actual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." Administrative Plan, 110.

**ANSWER**:     **CHA admits that the quoted provision is included in CHA's Administrative Plan. CHA denies all allegations of Paragraph 98 inconsistent with the express terms of the Administrative Plan.**

99.     Mr. Kelly's hearing decision does not explain his reasoning, does not cite which legal rules were followed, and does not include any factual determinations based on a preponderance of evidence presented at the hearing.

**ANSWER**:     **Denied.**

100.     CHA's failure to operate in accordance with its own administrative plan creates confusion and leads to unpredictable and inconsistent outcomes. Because CHA participants can

26

never be sure which rules will apply to their termination hearing, they are deprived of the constitutionally protected right to an adequate hearing.

**ANSWER**:     **Denied.**

101.     Because CHA has failed to operate in conformity with its own administrative plans, Ms. Bryant was never meaningfully heard, which led to the termination of her housing assistance. Terminating Ms. Bryant's assistance has and will continue to cause injury, including the imminent risk of homelessness for her and her family.

**ANSWER**:     **Denied.**

**COUNT VII: CHA violated Ms. Bryant's right under the 42 U.S.C. § 3544 which prohibits a PHA from terminating housing assistance without first independently verifying tenant-provided income information**.

102.     Plaintiff incorporates by reference the above-paragraphs as though fully pleaded herein.

**ANSWER**:     **In response to the allegations of Paragraph 102, Defendant similarly restates each answer set forth above as if fully rewritten here.**

103.     The McKinney Homeless Assistance Amendments Act of 1988, 42 U.S.C. § 3544, entitles participants to third-party verification of any discrepant information found in HUD's Enterprise Income Verification system.

**ANSWER**:     **CHA admits that the statute cited in this paragraph is currently in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statutes.**

104.     This requirement is also found in applicable regulations at 24 C.F.R. § 5.236(b).

**ANSWER**:     **CHA admits that the regulations cited in this paragraph are currently in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited regulations.**

27

105.    PHAs are also required to verify tenant-provided income information at least annually. 42 U.S.C. § 1437f(o)(5)(B).

**ANSWER**:    **CHA admits that the statute cited in this paragraph is currently in effect. To the extent further response may be required, CHA denies all allegations of this paragraph inconsistent with the express terms of the cited statutes.**

106.    CHA's Administrative Plan clarifies that the birth of a new family member will trigger an interim reexamination. Administrative Plan, 100.

**ANSWER**:    **CHA admits that the quoted provision is included in CHA's Administrative Plan. CHA denies all allegations of Paragraph 106 inconsistent with the express terms of the Administrative Plan.**

107.    Ms. Bryant submitted her son's birth certificate to CHA in August 2022. Pursuant to CHA policy, this should have triggered an interim recertification in which Ms. Bryant's income would be verified.

**ANSWER**:    **CHA admits that Ms. Bryant emailed to CHA her son's social security number and birth certificate on August 22, 2022 and pursuant to the terms of CHA's Administrative Plan, that action did trigger a recertification based on the information submitted by Ms. Bryant.  CHA denies all other allegations of Paragraph 107 not expressly admitted herein.**

108.    Failure to verify Ms. Bryant's income before taking adverse action on the basis of that information is a violation of 42 U.S.C. § 3544 and CHA's own Administrative Plan.

**ANSWER**:    **Denied.**

109.     CHA's failure to verify Ms. Bryant's income at the appropriate intervals led to CHA's later allegation of fraud, which led to the deprivation of her housing assistance. CHA's actions are the direct and proximate cause of Ms. Bryant's injury.

**ANSWER**:     **Denied.**

### AFFIRMATIVE DEFENSES AND FURTHER DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted to Plaintiff.

2.     Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands and/or unjust enrichment.

3.     Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

4.     Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, acquiescence, and/or estoppel.

5.     Plaintiff is not entitled to attorney's fees.

6.     Plaintiff is not entitled to a jury on Plaintiff's claims.

7.     CHA is presently without information as to the availability or applicability of affirmative defenses in addition to those pled above and expressly reserves the right to amend this Answer to plead other affirmative defenses or matters of avoidance in accordance with the Federal Rules of Civil Procedure upon the discovery of additional facts ascertained through continuing and ongoing investigation and discovery.

Respectfully submitted,

**MILLER & MARTIN PLLC**

/s/ Larry L. Cash
Larry L. Cash (BPR #009386)
larry.cash@millermartin.com
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402-2289
Telephone: (423) 756-6600

*Attorneys for the Chattanooga Housing Authority*

## CERTIFICATE OF SERVICE

I hereby certify that on **April 9, 2024,** a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

**MILLER & MARTIN PLLC**

By: /s/ Larry L. Cash

Larry L. Cash (BPR #009386)